**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

_____
                                                       )
In re:                                              )
                                                       )
    DYLAN Y. FRANKEL,              )    Chapter 7
    LAURA A. FRANKEL,              )    Case No. 13-41468-HJB
                                                       )
        Debtors             )
_____ )

## MEMORANDUM OF DECISION

Before the Court is an objection filed by David M. Nickless, Chapter 7 trustee (the "Trustee"), to an exemption claimed by Dylan and Laura Frankel, the debtors in this Chapter 7 bankruptcy case (together, the "Debtors"; individually, "Dylan" and "Laura"). The issue to be resolved is whether Laura may claim an exemption in a vehicle titled in Dylan's name, on the grounds that she owns the vehicle by operation of a resulting trust.

I.    FACTS AND TRAVEL OF THE CASE

In April 2008, the Debtors, then husband and wife, were in the market for a vehicle to replace Laura's 1998 Nissan Maxima sedan (the "Nissan"). At the time, Laura, employed as a teacher, was pregnant with the Debtors' third child. As the other two children were still required to use car seats, and the Debtors believed that the Nissan could not hold three car seats safely, they decided to purchase a larger vehicle.

1

The Debtors tested several vehicles at an auto dealership and ultimately decided to purchase a 2005 Honda Odyssey minivan (the "Honda") to replace the Nissan. After having made that decision at the dealership, the Debtors returned home while the dealer prepared the paperwork.

Dylan returned to the dealership alone in his truck to finalize the paperwork late in the evening of April 3.  According to both Debtors, Laura stayed home with the two children, as she felt ill. At the dealership, Dylan was informed that because Laura was not present to sign, the requisite paperwork would be changed to reflect only Dylan as the purchaser and vehicle owner. Dylan signed the updated paperwork that evening. Dylan testified that he took delivery of the Honda that evening, although Laura testified that she and Dylan returned to the dealership in Dylan's truck at a later time to pick up the Honda.  The Court finds Laura's recollection more plausible, given that Dylan could not have driven both his truck and the Honda home from the dealership on the night he signed the paperwork.  Laura admitted that, upon the Debtors' return to the dealership to accept delivery of the Honda, she did not ask that the paperwork be changed again to reflect her ownership of the vehicle, rather than Dylan's.

The Debtors made a down payment of $4,644 on the purchase of the Honda. Laura testified that the funds for the down payment came from the Debtors' joint tax refund[1]. The remainder of the purchase price was financed with a secured loan from Digital Credit Union ("DCU") (the "Loan").  Initially, DCU drafted the loan documents solely in Laura's name, but given that the dealer's paperwork reflected Dylan as the sole

---

[1] The testimony does not indicate the amount of the tax refund.  When Laura was asked by the Court the source of the $4,644 down payment on the Honda she answered, "I believe that was a tax return refund, if I recall."  Laura also testified that the Debtors filed a joint tax return.

2

owner, the Loan documents were amended to add Dylan as co-borrower.

A portion of the Loan was later repaid with proceeds from the private sale of the Nissan, and most of the subsequent monthly payments on the Loan were made by direct deductions from a checking account held solely in Laura's name and into which Laura's earnings were deposited (the "Checking Account"). But Laura testified that, although the Checking Account was held in her name, Dylan also deposited funds from his self-employment into that account. And evidence and testimony at trial established that Dylan made at least two payments on the Loan directly from his individual business account. It is clear that Laura was the primary driver of the Honda, using it to commute to work and transport the children, although Dylan drove the vehicle occasionally while on family outings.

On June 3, 2013, the Debtors filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Code" or the "Code").[2] On their Schedule B filed with the bankruptcy petition, the Debtors disclosed two vehicles owned by Dylan – his truck (the "Truck") and the Honda, neither of which was encumbered by the date of case commencement. On Schedule C, the Debtors claimed the entire value of both vehicles as exempt, employing §§ 522(d)(2) and (d)(5).

At the Section 341 meeting held on July 1, 2013, the Trustee expressed doubt that Dylan, as sole owner of both vehicles, could claim an exemption in both. Shortly thereafter, on July 17, the Debtors filed amended schedules B and C, this time listing Dylan as the owner of the Truck, but Laura as the owner of the Honda. In support of

---

[2] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

that changed claim of ownership, the Debtors indicated on the amended Schedule B that:

> Title was put in Husband's name for convenience purposes only. Husband holds title under a resulting trust for the benefit of Wife who paid the consideration for the vehicle and is sole user of vehicle for work and to transport children.

First Amd. Scheds. B & C, ECF No. 16. Again, the entire value of both vehicles was claimed as exempt pursuant to §§ 522(d)(2) and (d)(5).

On July 25, 2013, the Trustee filed an objection to the Debtors' claimed exemptions in the vehicles (the "Objection"), to which the Debtors filed a response in opposition. Following an evidentiary hearing, the Objection was taken under advisement.

## II.   POSITIONS OF THE PARTIES

The Trustee contends that Dylan, as the sole owner of both vehicles, can claim as exempt only one vehicle pursuant to § 522(d)(2). Accordingly, he can apply that exemption to his Truck or to the Honda, but not to both. And as Dylan has used the full amount of the exemption under § 522(d)(5) to protect his equity in other property, that exemption is no longer available to him.

But the Debtors assert that the equity in the Honda can be exempted employing the § 522(d)(2) and (d)(5) exemptions available to Laura, because she is the true owner of the Honda. They maintain that it was always the Debtors' intention that the Honda be solely for Laura's use, and that Laura did not accompany Dylan to the dealership to sign the paperwork to acquire title to the Honda only because she was unwell. According to the Debtors, Dylan held title to the Honda in a resulting trust for the benefit of Laura,

4

who supplied the down payment and made the Loan payments from her Checking Account.

The Trustee responds, however, the Debtors have produced insufficient evidence of a resulting trust created by Dylan in Laura's favor. Relying on the presumption that "[t]ransfers amongst family members are presumed to be gifts," T'ee Brief 2, Nov. 25, 2013, ECF No. 63, the Trustee contends that the Debtors have failed to overcome that presumption. Rather, says the Trustee, the Debtors stated on their originally-filed schedules and confirmed at the Section 341 meeting that Dylan owned both of the vehicles – an acknowledgment which was repudiated only after the Trustee questioned the propriety of the claimed exemptions. Furthermore, the Trustee argues that Laura did not provide the sole funds used to purchase the vehicle. The down payment came from a joint tax refund; both debtors periodically deposited funds into the Checking Account from which the Loan payments were made; and Dylan actually made two payments from his own business checking account.

## III.   DISCUSSION

The Debtors have elected to claim the exemptions provided by the Bankruptcy Code at § 522(d),[3] specifically relying on §§ 522(d)(2) and (d)(5) to exempt the equity in both the Truck and the Honda. Subsection (d)(2) permits a debtor to exempt up to §3,450.00 in the value of "*one* motor vehicle." 11 U.S.C. § 522(d)(2). Subsection (d)(5),

---

[3] Unless residing in a state that has "opted out," Debtors may elect, pursuant to § 522(b)(1), to exempt property of the estate in accordance with either applicable state and non-bankruptcy federal law, see 11 U.S.C. § 522(b)(3), or in accordance with § 522(d) of the Bankruptcy Code. Massachusetts has not "opted out," and debtors filing in Massachusetts may elect either of the two alternatives.

5

often referred to as the "wildcard" exemption, permits a debtor to exempt an interest in *any* property, up to certain specified amounts. 11 U.S.C. § 522(d)(5). The Debtors' Schedule C, as originally filed, was objectionable because (i) Dylan, listed as sole owner of both the Truck and the Honda, could not use the exemption available to him under (d)(2) to exempt the equity in both vehicles; and (ii) the total value of the exemptions claimed by Dylan under (d)(5) exceeded the statutory maximum. And, as originally filed, Laura could not claim a valid exemption in the Honda under either (d)(2) or (d)(5), as she had no ownership interest in the asset. See, e.g., In re Padilla, No. 11-02793, 2011 WL 5911243, *3 (Bankr. D.P.R. Nov. 28, 2011) (quoting In re Cohen, 263 B.R. 724, 726 (Bankr. D.N.J. 2001) ("[A] debtor must have an ownership interest in property before an exemption may be claimed.").

Laura contends that she has a property interest in the Honda by way of a resulting trust, and therefore she can use the exemptions available to her under subsections (d)(2) and (d)(5) to exempt the equity in the Honda. See 11 U.S.C. § 522(m) (exemption provisions "shall apply separately with respect to each debtor in a joint case"). Since "[p]roperty interests are created and defined by state law," Butner v. U.S., 440 U.S. 48, 55 (1979), the Court must first examine Massachusetts law on resulting trusts to see whether the Debtors' argument has any merit before determining its impact under the Bankruptcy Code.

"Typically, a resulting trust arises in instances where one furnishing the consideration [to purchase] property places legal title to the property in the name of another while intending that the one furnishing the consideration be the true, equitable owner. Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp.), 301 B.R. 104, 112 (Bankr.

6

D. Mass. 2003) (citing Checovich v. Checovich, 339 Mass. 71, 157 N.E.2d 643 (1959)). The testimony shows that the down payment for the Honda came from the Debtors' joint tax refund. At the time of the purchase, Laura still owned the Nissan, which was not used as a trade-in. Given the joint nature of the tax refund, the Debtors have not demonstrated that the down payment for the purchase of the Honda came solely from Laura. Furthermore, the Loan payments were made from the Checking Account into which Dylan deposited funds from his business and on at least two occasions Dylan himself made Loan payments from his business checking account.

"A resulting trust is an equitable device, employed to correct a defect in the execution of a transferor's intent." Lassman v. McQuillan (In re Charles River Press Lithography, Inc.), 338 B.R. 148, 160 (Bankr. D. Mass. 2006). "A resulting trust arises where a party conveys property under circumstances that raise an inference that she does not intend for the transferee to receive the entire beneficial interest in the property." City of Springfield v. Lan Tamers, Inc. (In re Lan Tamers, Inc.), 281 B.R. 782, 792 (Bankr. D. Mass. 2002) (quoting Restatement (Third) of Trusts, § 7); Clemente v. Nickless, 434 B.R. 202, 205 (D. Mass. 2010). The intent of the parties at the time of the transfer is, therefore, a critical issue.

Furthermore, a transfer among family members is presumed to be a gift. Clemente, 434 B.R. at 206 (citing Krasner v. Krasner, 362 Mass. 186, 285 N.E.2d 398, 399 (1972)). That presumption can be overcome.

> [T]he presumption that a gratuitous transfer to a family member is a gift may be overcome and a resulting trust may be imposed if it is established that (1) the intent of the transferor at the time of the transfer was not to convey the beneficial interest to the transferee, and (2) there was acquiescence on the part of the transferee.

7

Citizens Bank of Mass. v. Coleman, 83 Mass. App. Ct. 609, 616-17, 987 N.E.2d 1282, 1289, review denied, 466 Mass. 1101, 991 N.E.2d 187 (2013).

When shopping for a replacement vehicle, both Dylan and Laura went to the dealership together at least three times; to look at available cars; to test drive possible choices; and finally to pick up the Honda. Only on the evening that the paperwork was signed did Dylan travel to the dealership alone. When Dylan was at the dealership, he elected to take title solely in his name. Later, Dylan and Laura returned to the dealership to pick up the Honda, but they did not choose to correct this ownership choice. Laura also did not choose to correct the title to the Honda when arranging for the Loan, electing instead to add Dylan to the Loan documentation rather than replace him. And payments on the Loan were made from an account to which both Debtors contributed.

Under these circumstances, there is no clear evidence that a trust relationship was the Debtors' intention at any time. Additionally, it is hard for this Court to read into the actions of the Debtors acquiescence by Dylan to the creation of a resulting trust in favor of Laura. To the extent that a transferor "directs [the] management" of the property or "otherwise acts as an owner would act, especially with the transferee's acquiescence," there is sufficient evidence to rebut the presumption of a gift. Bash v. Cunningham (In re Cunningham), 2008 WL 2746023, *4 (Bankr. N. D. Ohio July 11, 2008) (quoting Restatement (Third) of Trusts § 9, cmt. c (2003); Nickless v. Clemente (In re Clemente), 413 B.R. 1, 10 (Bankr. D. Mass. 2009), rev'd in part sub nom. Clemente v. Nickless, 434 B.R. 202. But on the night Dylan signed the paperwork, he unilaterally made the decision to take title in his name. Neither Dylan nor Laura testified

8

that Dylan spoke to or discussed that decision with Laura before it was made nor did Laura reverse that decision once it became known to her. In making this decision without consultation, it was Dylan, not Laura, who was performing 'acts as an owner would act'.

The Debtors stated under oath on their originally-filed schedules that the Honda was owned by Dylan. The Debtors repeated that assertion, under oath, in their testimony at the Section 341 meeting. "[T]he Debtor did not list her "trust" interest in the Property in the Schedules which were signed under penalty of perjury." In re Cantrell, 270 B.R. 551, 557 (Bankr. D. Conn. 2001) (finding no resulting trust where the debtor did not claim the existence of a resulting trust until after the meeting of creditors); cf. Davenport v. S.I. Securities (In re Davenport), 268 B.R. 159, 162 (Bankr. N.D. Ill. 2001) (resulting trust found when, among other things, the debtor's original "bankruptcy schedules showed an equitable interest in the property"). The presumption of a gift, from Laura to Dylan, has not been overcome. The Debtors have not proven that their intention at the time of the transfer was for Dylan to hold the Honda in trust for Laura, nor have they adequately shown that Dylan acquiesced to the creation of any such trust.

## IV. CONCLUSION

This Court finds and rules that Dylan owned both the Truck and the Honda on the date this case commenced and he did not hold the Honda in a resulting trust in favor of Laura. Since he is afforded an exemption in only one vehicle under § 522(d)(2) and the exemption available under § 522(d)(5) has been allocated to other property, the

Trustee's objection to the exemption claimed in the Honda is SUSTAINED.  An order in conformity with this Memorandum shall issue forthwith.

*[signature: Henry Jack Boroff]*

DATED:  April 7, 2014                             _____
                                                  Henry J. Boroff
                                                  United States Bankruptcy Judge